IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT DUNKLIN,                )
AIS #227652,                   )
                               )
        Plaintiff,             )
                               )
    v.                         )      CASE NO. 2:15-CV-124-WKW
                               )              (WO)
                               )
SHERIFF KENNY HARDEN,          )
                               )
        Defendant.             )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY[1]

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Robert

Dunklin, a state inmate, in which he alleges that the defendant acted with deliberate

indifference to his health during a prior term of incarceration at the Butler County

Correctional Facility.[2] Specifically, Dunklin alleges that Sheriff Harden failed to properly

supervise the facility's nursing staff to ensure proper medical treatment for his back and

joint pain. Dunklin seeks declaratory and injunctive relief for the alleged violations of his

constitutional rights.

---

[1]All documents and page numbers cited are those assigned by this court in the docketing process.

[2]It is undisputed that Dunklin was a convicted felon at the time of the actions made the basis of the instant
complaint; his confinement in the Butler County Correctional Facility arose from the revocation of his
probation for a first degree rape conviction. *Doc. No. 28-3* at 3-5.

Defendant Harden filed a special report, supplemental report and relevant evidentiary materials in support of his reports, including affidavits and certified copies of medical records, addressing the claims presented by Dunklin. In these filings, the defendant denies that he acted with deliberate indifference to Dunklin's health or medical needs.

The court entered orders allowing Dunklin the opportunity to file responses to the reports and evidentiary materials submitted by the defendant. *Doc. No. 29; Doc. No. 38*. The latter order advised the parties that unless "sufficient legal cause" is shown within fifteen days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time allowed for filing responses] and without further notice to the parties (1) treat the special report[s] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." *Doc. No. 38* at 2-3 (emphasis removed). Dunklin filed responses to these orders supported by documentary evidence and an affidavit. *Doc. No. 32*; *Doc. No. 39*.

Pursuant to the aforementioned orders, the court deems it appropriate to treat the defendant's reports cumulatively as a motion for summary. Upon consideration of the defendant's motion for summary judgment, the supporting evidentiary materials, the sworn complaint and the plaintiff's responses to the reports, the court concludes that summary judgment is due to be granted in favor of the defendant.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); F.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[3] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477

---

[3] Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

U.S. at 322-32417cv194. A fact is material if it is relevant or necessary to the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes of fact not material to the outcome of a case do not preclude entry of summary judgment in favor of the moving party. *Id*. at 247-248 (The summary judgment "standard provides that the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact… . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

The defendant has met his evidentiary burden. The burden therefore shifts to Dunklin to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may … grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine

dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson*, 477 U.S. at 249; Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable … or is not significantly probative … summary judgment may be granted." *Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573,

1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding summary judgment appropriate where no genuine dispute of

material fact exists). At the summary judgment stage, this court must "consider all evidence in the record … [including] pleadings, depositions, interrogatories, affidavits, etc. – and can only grant summary judgment if [the evidence] in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts… . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine

dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough review of all the evidence contained in the record and, after such review, finds that Dunklin has failed to demonstrate a genuine dispute of material fact in order to preclude the entry of summary judgment in favor of the defendant.

## III. DISCUSSION[4]

---

[4]In accordance with well settled law, the court limits its review to the allegations set forth in the complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."); *Ganstine v.*

On March 10, 2013, law enforcement officials placed Dunklin in the Butler County Correctional Facility due to his violation of probation on a prior state conviction.[5] In the complaint, Dunklin states that he "strongly believe[s] [two nurses gave him] the wrong kind of medication for pain" and complains that the nurses failed to refer him to a doctor for treatment. *Doc. No. 1* at 9. He asserts that Sheriff Harden "is responsible for the nurse[s'] action[.]" *Id.* at 5.

Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or welfare when the official knows the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County, Al.*, 268 F.3d 1014, 1028 (11th Cir. 2001).

*Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (court refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

[5]Dunklin was transferred to the custody of the Alabama Department of Corrections on April 24, 2013. The last address Dunklin provided to the court is Easterling Correctional Facility.

To prevail on a claim concerning allegedly improper medical treatment, an inmate must, at a minimum, show that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Specifically, jail personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment."

> That medical malpractice – negligence by [medical personnel – is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble*, 429 U.S. 97, 105-07, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan*, 511 U.S. 825, 833-38, 114 S.Ct. 1970, 1977-79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams*, 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.*, 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct,

and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to set forth a cognizable claim of "deliberate indifference to [a] serious medical need …, Plaintiff[] must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-1307 (11th Cir. 2009). In seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk to the prisoner's health or safety). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' … and second, that the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment. *Estelle*, 429 U.S. at 104-97, 97 S.Ct. 285." *Simpson v. Holder*, 200

F.App'x 836, 839 (11th Cir. 2006); *Kingsley v. Hendrickson*, __ U.S. __, __, 135 S.Ct. 2466, 2472 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1999)) (emphasis added) (It is well-settled "[t]hat … 'liability for ***negligently*** inflicted harm is categorically beneath the threshold of constitutional due process.'"); *Estelle*, 429 U.S. at 106 (neither negligence nor medical malpractice "become[s] a constitutional violation simply because the victim is incarcerated."); *Farmer*, 511 U.S. at 835, 836, 114 S.Ct. 1970 (A complaint alleging negligence or inadvertence in treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Harden v. Williams*, 474 U.S. 327, 332 (1986) (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries. … We have previously rejected reasoning that would make of the Fourteenth a font of tort law to be superimposed upon whatever systems may already be administered by the States."); *Kelley v. Hicks*, 400 F.3d 1281, 1285 (11th Cir. 2005) ("Mere negligence . . . is insufficient to establish deliberate indifference."); *Matthews v. Palte*, 282 F. App'x 770, 771 (11th Cir. 2008) (affirming district court's summary dismissal of inmate complaint alleging "misdiagnosis and inadequate treatment [as such] involve no more than medical negligence. Consequently, merely accidental inadequacy, negligence in diagnosis, negligence in treatment and medical malpractice do not suffice to establish the

objective component of claims seeking relief for alleged constitutional violations regarding medical treatment provided to an inmate.

Furthermore, "to show the required subjective intent …, a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' … which is in turn defined as requiring two separate things 'awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists [] and … draw[ing] of the inference[.]'" *Taylor*, 221 F.3d at 1258 (internal citations omitted). Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837. Additionally, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, … the Supreme Court has … emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle*, 429 U.S. at 105, 97 S.Ct. at 291; *Mandel*, 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference);

> *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.  *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Taylor*, 221 F.3d at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a serious medical need, a plaintiff must demonstrate that the defendant's response to the need was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law.").

Moreover, "as *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001) ("A difference of opinion as to how a condition should be treated does not give rise to a constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (mere fact inmate desires a different mode of medical treatment does not amount to deliberate indifference which violates the Constitution); *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981) (medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient).  Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created

medical records.  *See Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990); *Scott*, 550 U.S. at 380.

Dunklin argues that Sheriff Harden is responsible for the treatment decisions of the jail's nurses and his failure to intervene in these decisions constituted deliberate indifference.  Harden avers that he was not in any way involved in the medical treatment provided to Dunklin and he relies exclusively on the facility's contract medical personnel to provide such treatment. *Doc. No. 28-1* at 2-5. Dunklin concedes that Harden had no involvement with his medical treatment. *Doc. No. 39* at 1. In his affidavit, Sheriff Harden states, in relevant part, that:

> …  All medical care given to inmates in the Correctional Facility is delivered under the direction of a licensed health care practitioner… . Medical … matters requiring clinical judgment are the sole providence [sic] of a responsible health care provider.  Inmates are also guaranteed access to any diagnostic, laboratory, or other treatment services, as directed by the responsible health care authority.
>
> . . .
>
> Plaintiff was examined by QCHC medical staff during his incarceration at the Butler County Correctional Facility and to my knowledge all instructions of medical staff have been followed by Correctional Center staff.[6]
>
> Other than basic first aid, I do not have any specific medical training. I am forced to rely, therefore, upon the professional opinions of the doctor and nurses who treat inmates at the Butler County Correctional Facility. I have not seen or heard anything that would indicate to me that the services provided by these medical professionals have been anything other than satisfactory.

*Doc. No. 30* at 4-5 (paragraph numbering omitted) (footnote added).

---

[6] QCHC served as the contract medical provider for the Butler County Correctional Facility at the time of the actions about which Dunklin complains.

Stacey Sexton, a licensed practical nurse employed by QCHC to provide medical treatment to inmates at the Butler County Correctional Facility, addresses the plaintiff's allegations as follows:

> … Plaintiff was examined by a QCHC medical professional approximately 10 times during his March 10, 2013 through April 24, 2013 incarceration.
>
> Plaintiff was administered all medications that he was prescribed according to the prescription instructions [of Dr. Bates]. During Plaintiff's March 10, 2013 through April 24, 2013 incarceration, he was prescribed and received Clonidine (treats high blood pressure), Zantac (treats heartburn), meloxicam/Mobic (anti-inflammatory used to treat arthritis and to reduce pain, swelling and stiffness), milk of magnesia (laxative and antacid), Colace (laxative), and hydrochlorothiazide (treats high blood pressure and edema).
>
> Contrary to Dunklin's claims, he was not denied medication for back pain or given the wrong medication. … In fact, on March 30, 2013, Plaintiff was examined by Dr. Bates and prescribed Meloxican (the generic form of Mobic) in response to sick call request slips [submitted by Dunklin] complaining of joint pain and swelling. On April 5, 2013, Plaintiff submitted a sick call request stating that he received the wrong medication. However, at his examination by a nurse that same date, Plaintiff signed a statement that he had received the correct medication. Plaintiff was observed ambulating without difficulty and no edema was noted.

*Doc. No. 36-1* at 2-3. The affidavit of Nurse Sexton is corroborated by the objective medical records compiled contemporaneously with the treatment provided to Dunklin relative to his claim of deliberate indifference.

The medical records further indicate that, during the April 5, 2013 evaluation, Nurse Sexton showed Dunklin his prescribed medication. Dunklin identified the medication as that provided to him and, although initially advising that "the Mobic 15mg was the wrong pill[,]" *Doc. No. 28-3* at 19, subsequently indicated that "he received [the]

correct medication." *Doc. No. 28-3* at 16. At this time, Nurse Sexton observed no swelling and noted "no acute distress." *Doc. No. 28-3* at 19.

On April 8, 2013, Dunklin reported to the health care unit with "a pill in his pocket [stating it constituted evidence that he received the wrong medication]. [Nurse Sexton] ask[ed] to see the pill… . [Dunklin] put the pill to his mouth, said I'll take it." *Doc. No. 28-3* at 19. Nurse Sexton retrieved the pill from Dunklin and identified it as Mobic, one of the medications prescribed for Dunklin. *Id*.

Dunklin has failed to demonstrate deliberate indifference or reckless disregard on the part of Sheriff Harden. Specifically, the record contains no evidence that the defendant was aware of information from which an inference could be drawn that a substantial risk of serious harm existed. Consequently, summary judgment is due to be granted in favor of defendant Harden on Dunklin's claim alleging deliberate indifference arising from the actions of medical personnel in treating his pain.

Insofar as Dunklin seeks to hold defendant Harden liable for the treatment provided by medical professionals, Dunkin is likewise entitled to no relief, as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White*

> *v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, et al., 525 F.Supp.2d 1302, 1307 (M.D. Ala. 2007).

Even assuming *arguendo* that defendant Harden exerted some authority over the manner in which those persons responsible for medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior [or vicarious liability]… . *Robertson v. Sichel*, 127 U.S. 507, 515–516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties'). Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct. 1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269

(11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of respondeat superior or vicarious liability.). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949. Thus, liability for medical treatment provided to Dunklin could attach to Sheriff Harden only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [their] actions … and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Dunklin, however, concedes that Sheriff Harden did not personally participate or have any involvement, direct or otherwise, in the medical treatment provided by health care personnel. *Doc. No. 39* at 1. The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the treatment provided to Dunklin and provided treatment to him in accordance with their professional judgment upon assessment of his physical condition.

In light of the foregoing, defendant Harden can be held liable for decisions of medical personnel only if his actions bear a causal relationship to the purported violation of Dunklin's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Harden, Dunklin must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged

deprivation, and [he] fail[ed] to do so" or "a … custom or policy [that] result[ed] in deliberate indifference to [his medical needs], or … facts [that] support an inference that [the correctional defendants] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). After extensive review of the pleadings and evidentiary materials submitted in this case, it is clear that Dunklin has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that defendant Harden directed medical personnel to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Dunklin has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which this defendant failed to take corrective action; instead, the undisputed medical records indicate that Dunklin had continuous access to medical personnel and received treatment for his back and joint pain. The undisputed records also demonstrate that the challenged course of medical treatment did not occur pursuant to a policy enacted by the defendant. Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not justified. *Cf. Employment Div. v. Smith*, 494 U.S. 872, 877, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *Turner v. Safely*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

For the foregoing reasons, summary judgment is likewise due to be granted in favor of defendant Harden with respect to liability based on the theory of respondeat

superior. Furthermore, even had Dunklin presented a proper basis for the claims lodged against defendant Harden, the medical records before the court demonstrate that health care personnel did not act with deliberate indifference to Dunklin's medical needs.[7]

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendant's motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendant.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before August 24, 2017 the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal

---

[7] Under the circumstances of this case, the undisputed evidence shows that the course of treatment undertaken by medical personnel at the Butler County Correctional Facility did not violate Dunklin's constitutional rights. The medical care Dunklin received was adequate and not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. The evidence before the court demonstrates that medical personnel examined Dunklin regarding his complaints of pain and provided medication to him in an effort to alleviate his pain. As stated herein, negligence in treatment does not constitute deliberate indifference actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771. Consequently, Dunklin's allegation that medical personnel inadvertently provided him the wrong medication does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991). As for his claim regarding lack of referral to a physician, the medical records indicate that Dr. Bates examined Dunklin, routinely reviewed the nurse's evaluations and prescribed medication he deemed appropriate for treatment of Dunklin's various conditions. A difference of opinion regarding the manner in which to treat an inmate fails to demonstrate a constitutional violation. *Garvin*, 236 F.3d at 898; *Adams*, 61 F.3d at 1545-1546 (Whether medical personnel "should have employed additional . . . forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis [on which to ground constitutional liability]."). Finally, Dunklin has failed to present any evidence that the facility's medical staff knew that the manner in which they provided treatment to him created a substantial risk to his health and that with this knowledge consciously disregarded the risk. The record is therefore devoid of evidence showing that health care personnel acted with deliberate indifference to Dunklin's medical needs.

conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, on this the 10th day of August, 2017.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge